UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| MOUNT VERNON FIRE INS. CO., | |
| Plaintiff, | |
| | CIVIL ACTION |
| v. | NO. 12-00459-WGY |
| EL RANCHO DE PANCHO LLC and GEORGE VALLAS, Administrator of the Estate of Nick E. Vallas, | |
| Defendants. | |

FINDINGS OF FACT, RULING OF LAW, DECLARATION

YOUNG, D.J.[1]                                November 20, 2013

I.   INTRODUCTION

   The plaintiff, Mount Vernon Fire Insurance Company ("Mount Vernon"), seeks declarations that it is not required to handle or pay a certain insurance claim. The remaining parties to this action have agreed to have the motion for summary judgment presently before this Court converted into a case stated. The dispositive issue before the Court is whether insurance beneficiary El Rancho De Pancho LLC ("El Rancho De Pancho") violated the terms of its agreement with Mount Vernon on October

---

[1] Of the District of Massachusetts, sitting by designation. See Order Transfer, Feb. 5, 2013, ECF No. 28.

1

9, 2011, giving rise to the injury upon which the insurance claim in question is based.

A.  **Procedural Posture**

On March 26, 2012, Mount Vernon filed a complaint against El Rancho De Pancho and George Vallas as administrator of the Estate of Nick E. Vallas ("the Estate").  See Compl. Declaratory J. ("Compl."), ECF No. 1.  In its complaint, Mount Vernon asks this Court to declare that El Rancho De Pancho materially breached warranties made to Mount Vernon and as a result of this breach, Mount Vernon is not required to handle or pay claims made by the Estate based on an October 9, 2011, injury sustained by Nick E. Vallas.  Compl. 8, 10-11.[2]

Mount Vernon then filed a motion for summary judgment on October 16, 2012, based on its intuition that as matter of law El Rancho De Pancho breached warranties in its policy with Mount Vernon.  Mot. Summ. J. ("Mot.") 1, ECF No. 18; Mem. Law Supp. Mot. Summ. J. ("Mem. Supp. Mot."), ECF No. 19.  On November 21, 2012, the Estate filed its response to Mount Vernon's motion for summary judgment, claiming that dispositive and genuine issues

---

[2] El Rancho De Pancho was subsequently served on May 2, 2012 with an answer due on May 23, 2012.  Elec. Clerk's Notes, ECF No. 10.  After the May 23 deadline passed without answer from El Rancho De Pancho, Mount Vernon filed a motion for default judgment against El Rancho De Pancho, which this Court granted on June 7, 2012.  Req. Enter Default 1, ECF No. 14; Order, ECF No. 16.  Thus, Mount Vernon and the Estate are the only remaining parties.

2

of material fact remain as to the interpretation of certain warranties made between Mount Vernon and El Rancho De Pancho. Def.'s Objection Pl.'s Mot. Summ. J. ("Response") 1-2, ECF No. 24. A reply was filed by Mount Vernon on December 19, 2012. Pl.'s Reply Def.'s Mem. Opp'n Mot. Summ. J. ("Reply"), ECF No. 26. The parties have since agreed to present this dispute as a case stated, and a hearing was held on July 30, 2013.[3] Order, ECF No. 39.

---

[3] As this Court has previously explained,

> [d]erived from the procedures of the courts of the Commonwealth of Massachusetts, see, e.g., Parker v. Morrell, 59 Mass. App. Dec. 34 (Mass. Dist. Ct. 1976), the 'case stated' procedure is firmly established in the jurisprudence of the First Circuit. See, e.g., Situation Mgmt. Sys., Inc. v. ASP Consulting LLC, 560 F.3d 53, 58 (1st Cir. 2009); Continental Grain Co. v. Puerto Rico Maritime Shipping Auth., 972 F.2d 426, 429 n.7 (1st Cir. 1992); Boston Five Cents Sav. Bank v. Secretary of Dep't of Hous. & Urban Dev., 768 F.2d 5, 11-12 (1st Cir. 1985); Bunch v. W.R. Grace & Co., 532 F. Supp. 2d 283, 286-87 (D. Mass. 2008). . . . In this session of the Court, it works like this . . . the courtroom deputy clerk offers the parties to treat the case as a case stated. Should they accept, as they did here, the Court treats the undisputed facts as the established record and draws the reasonable inferences therefrom without the necessity of drawing adverse inferences against each moving party. The facts of the case being established, the Court affords each party thirty minutes for final argument (not the usual ten minutes per party when hearing argument on a motion). In due course, the Court enters findings and rulings as required by Federal Rule of Civil Procedure 52(a)(1).

Aspex Eyewear, Inc. v. Altair Eyewear, Inc., 818 F. Supp. 2d 348, 351 n.1 (D. Mass. 2011). The "case stated" procedure is just as acceptable to the Second Circuit. See Bryant v. Europadisk, LTD, No. 07Civ3050(WGY), 2009 WL 1059777 (S.D.N.Y.

B. **Jurisdiction**

This action seeks declaratory relief as a result of an alleged breach of contract in Connecticut; all defendants are diverse as to the plaintiff and the amount in controversy exceeds $75,000. See Compl. 1-2. Jurisdiction is therefore appropriate under 28 U.S.C. sections 1332 and 2201. See 28 U.S.C. §§ 1332(a), 2201(a).

II. **FINDINGS OF FACT**

Mount Vernon is domestic insurance company and a wholly owned subsidiary of the United States Liability Insurance Company, with its principal place of business in Wayne, Pennsylvania. Local Rule 56(a)1 Statement ("SOF") ¶ 1, ECF No. 20. El Rancho De Pancho, owner and operator of the El Rancho De Pancho bar and restaurant located on 120 New Canaan Avenue in Norwalk, Connecticut, is a limited liability company with its principal place of business in Connecticut. Id. ¶ 2. George Vallas is a resident of Wilton, Connecticut, and on January 5, 2012, was appointed by a Connecticut probate court as administrator of the estate of Nick E. Vallas. Id. ¶ 3.

On August 5, 2011, El Rancho De Pancho entered into an insurance policy with Mount Vernon for the period of July 25, 2011, to July 25, 2012. Id. ¶ 7; see also SOF, Ex. 2,

---

Apr. 15, 2009), aff'd sub nom., Bryant v. Media Right Prod., Inc., 603 F.3d 135 (2d Cir. 2010).

Certification Policy ("Policy") 2, ECF No. 20-2. The insurance agreement provided, in part, for the handling and payment of suits brought against the beneficiary based on its contribution to the intoxication of any person. SOF ¶ 9. The parties' dispute in the instant action, nevertheless, is a narrow one and is rooted in the following exclusion:

> Loss or expense, including but not limited to the cost of defense arising or resulting from a claim against any insured for "injury" based on the selling, serving or furnishing of any alcoholic beverage, if at any time, you have breached one or more of the warranties set forth in this Warranty Endorsement attached to and made a part of this policy.
>
> . . .
>
> The insured warrants as follows:
>
> . . .
>
> As a condition of coverage, the insured agrees to maintain the following warranties during the term of this policy and any renewals thereof:
>
> . . .
>
> - The establishment closes by 2:30 AM daily.
> - Alcohol sales cease by 2:00 AM.
> - The insured does not offer beer for less than $1.00.
> - The insured does not offer liquor or wine for less than $1.50.

Id. ¶ 13 (quoting Policy 109).

On October 9, 2011, shortly after 2:00 a.m., Nick E. Vallas ("Vallas") appeared at the door of El Rancho De Pancho with three friends: Peter Kibbe, Britt Kaplan, and Suzy Theodoridis. Id. ¶ 16, 18. At this time, the restaurant was closed to the

5

public. Id. ¶ 14-15. Vallas sought to be let into the restaurant with his friends, and, despite initially refusing to do so, Marcelo Rodriguez, the acting manager of El Rancho De Pancho at the time, eventually let them in. Id. ¶ 16-18. Once inside, employees of El Rancho De Pancho provided beer, tequila, and margaritas to Vallas and his friends, and did not charge anything for them. Id. ¶ 20.

At sometime between 3:30 a.m. and 4:47 a.m., Vallas and his friends left El Rancho De Pancho, either individually or as a group. Id. ¶ 21. After leaving El Rancho de Pancho, at approximately 4:47 a.m., Vallas drove a jeep off of New Canaan Avenue and struck two utility poles. Id. ¶ 22. Vallas subsequently died of the injuries sustained in the accident. Id. ¶ 23.

### III. RULINGS OF LAW

Under Connecticut law, "[a]s to compliance with a warranty in a contract of insurance, the general rule is that its terms must be strictly and literally fulfilled or the contract is vitiated." Standard Fur Cutting Co. v. Caledonian Ins. Co. of Scotland, 154 A. 153, 155 (Conn. 1931); see also J.E.M. Inc. v. Seneca Ins. Co., No. 3:03CV1487(AWT), 2007 WL 987543, at *4 (D. Conn. Mar. 31, 2007) (adopting Standard Fur language), aff'd, 309 Fed. Appx. 491 (2d Cir. 2009).

>   This means that there can be no variance or departure in
>   any particular as to any matter warranted, since the
>   validity of the entire contract depends on absolute truth
>   and conformity, the very purpose and meaning of a strict
>   warranty being to preclude all question as to the purpose,
>   if any, for which it was made; and this whether the breach
>   proceeds from negligence, misinformation, or to whatever
>   cause non-compliance is attributable.

Standard Fur, 154 A. at 155 (quoting 4 Couch, Cyclopedia of Insurance Law, § 870) (internal quotation marks omitted). Breach of a warranty renders an insurance policy void or voidable. McAllister Lighterage Line, Inc. v. Insurance Co. of N. Am., 244 F.2d 867, 871 (2d Cir. 1957).

Mount Vernon argues that El Rancho De Pancho's actions on October 9, 2011 (namely admitting Vallas and his friends after hours and providing them with free alcohol) violated certain warranties under the policy, in particular that "[t]he establishment closes by 2:30 AM daily," "[a]lcohol sales cease by 2:00 AM," "[t]he insured does not offer beer for less than $1.00," and "[t]he insured does not offer liquor or wine for less than $1.50." Mem. Supp. Mot. 25-26 (alterations in original).

The Estate asks this Court to read these provisions in light of the Connecticut plain English rule, possibly resulting in a reading in the Estate's favor. See Response 14-21. The problem with invoking this rule is that, as the Estate itself mentions in its briefs, it requires consumer contracts be

written in plain English. Response 14 (citing Conn. Gen. Stat. § 42-152). What is more, for the purposes of the Connecticut plain English rule, a consumer contract is a written agreement where:

> (1) A consumer enters into the agreement primarily for personal, family or household purposes; and
>
> (2) The agreement is one in which the consumer: (A) Borrows up to twenty-five thousand dollars or receives up to twenty-five thousand dollars in credit from a person who lends money or extends credit in the ordinary course of business; or (B) agrees to pay up to twenty-five thousand dollars to buy or lease personal property or services from a person who is acting in the ordinary course of business; or (C) leases any residential dwelling.

Conn. Gen. Stat. § 42-151(b). It cannot be said that the insurance agreement between Mount Vernon and El Rancho De Pancho would satisfy this definition.

"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy." Schultz v. Hartford Fire Ins. Co., 213 Conn. 696, 702 (1990). "If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous. . . . By contrast, language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion." Goldberg v. Hartford Fire Ins. Co., 269 Conn. 550, 559 (2004) (alterations in original)

8

(quoting Poole v. Waterbury, 266 Conn. 68, 88 (2003)). "[A]ny ambiguity . . . must emanate from the language used in the contract rather than from one party's subjective perception of the terms." Id. at 559 (alterations in original) (quoting Poole, 266 Conn. at 88). Finally, insurance contract language must be construed in "circumstances of [a particular case] and cannot be found to be ambiguous [or unambiguous] in the abstract." Lexington Ins. Co. v. Lexington Healthcare Grp., Inc., 309 Conn. 1, 14 (2013) (emphasis omitted) (alterations in original) (quoting Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co., 5 Cal. 4th. 854, 867 (1993)).

Mount Vernon argues that by letting four people into the restaurant after 2:00 a.m. and having them there until at least 3:00 a.m., the restaurant was not closed by 2:30 a.m. Mem. Supp. Mot. 25-26. What is more, Mount Vernon says that by serving four people alcohol during this time for free, not only did alcohol sales continue past 2:00 a.m., but they were made for less that the agreed upon minimum. Id.

The Estate argues that the warranty requiring that the establishment "close by 2:30 AM daily" merely requires that El Rancho De Pancho have its restaurant close, as a matter of its general business operation, before that time. See Response 17. The fact that this Court would have to add language to clarify that meaning, however, as opposed to simply interpreting the

9

warranty to mean that every day the restaurant must close by 2:30 a.m., would suggest that this is not the preferred interpretation. See Moore v. Continental Cas. Co., 252 Conn. 405, 414 (2000) ("We cannot rewrite the insurance policy by adding semicolons any more than we can by adding words."). Also, the language in which the warranties are set supports the interpretation that 2:30 a.m. daily meant each day and not merely as a matter of general practice. See Policy 120 (excluding coverage "if at any time, you have breached one or more of the warranties set forth [in the policy]"). By admitting people into the restaurant after 2:00 a.m. and serving them alcohol until at least 3:00 a.m., it cannot be said that on October 9, 2011 El Rancho De Pancho was closed by 2:30 a.m.

Because the Estate does not attack the validity of the "close by 2:30 AM daily" warranty itself, and because the agreement's warranty terms "must be strictly and literally fulfilled or the contract is vitiated," Standard Fur Cutting Co. 154 A. at 155, this Court need not go on to analyze the remaining alleged warranty breaches.

## IV. DECLARATION

For the foregoing reasons this Court declares that because El Rancho De Pancho materially breached the warranty endorsement provisions of the subject policy, coverage is barred under the

subject policy for any claims asserted by the Estate against El Rancho De Pancho arising out of the October 9, 2011 accident.

Judgment will enter so declaring.

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE